UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PENSION BENEFIT GUARANTY CORPORATION,** on its own behalf and on behalf of the MidStates Express, Inc. Employees' Pension Plan & Trust, <br><br>           **Plaintiff,** <br><br> v. <br><br> **MID-STATES EXPRESS, INC.,** <br> **AURORA FAST FREIGHT, INC.,** <br> **VALLEY CARTAGE, INC.,** <br> **NATIONAL TRANSPORT EXPRESS, INC.,** <br> **AMCORE BANK, N.A.,** <br> **CATERPILLAR FINANCIAL SERVICES CORP.,** <br> **FINANCIAL FEDERAL CREDIT, INC.,** <br> **CITICORP VENDOR FINANCE, INC.,** <br> **TRANSPORTATION ALLIANCE GROUP, INC.,** <br> **COMMERCIAL CREDIT GROUP, INC.,** <br> **TOYOTA MOTOR CREDIT CORP.,** <br> **CISCO SYSTEMS CAPITAL CORP.,** <br> **CITICAPITAL COMMERCIAL CORP.,** <br> **TAYLOR CAPITAL BUSINESS ADVISOR, INC.,** <br> **LIBERTY BANCSHARES, INC.,** <br> **IDA COUNTY STATE BANK,** <br> **ERVIN LEASING COMPANY,** <br> **TAPE PRODUCTS CO.,** <br> **ATLAS FIRST ACCESS, INC.,** <br> **R.V. EVANS CO.,** <br> **WIZARD OF WHEELS YAMAHA-KAWASAKI, INC.,** <br> **S AND F CUSTOM SIGN, INC.,** <br><br>           **Defendants.** | Case No. _____ <br><br><br><br><br><br><br><br><br><br> FILED STAMP: JULY 24, 2008 <br> 08CV4208 <br> JUDGE ZAGEL <br> MAG. JUDGE BROWN <br> J. N. |

## COMPLAINT

Plaintiff Pension Benefit Guaranty Corporation ("PBGC"), on behalf of the MidStates Express, Inc. Employees' Pension Plan & Trust (the "Pension Plan"), brings this action under 29 U.S.C. § 1303(e)(1) to: (1) obtain a judgment for unpaid minimum funding contributions owed to the Pension Plan; (2) enforce the statutory liens PBGC has perfected on the Pension

Plan's behalf; and (3) obtain a determination that the Pension Plan holds a valid first priority secured interest against certain assets of Mid-States Express, Inc., Aurora Express, Inc., and Valley Cartage, Inc. in the amount of $2,251,618, plus accrued interest, for contributions due the Pension Plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101-1461 (2000 & Supp. V 2005) ("ERISA").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1303(e)(3), and 28 U.S.C. §§ 1331 and 1345.

2. Venue properly lies in this Court, pursuant to 29 U.S.C. § 1303(e)(2).

## PARTIES

3. PBGC is a wholly owned United States government corporation, and an agency of the United States, that administers the defined benefit pension termination insurance program under Title IV of ERISA. PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA. Typically, when an underfunded plan terminates, PBGC becomes statutory trustee of the plan and, subject to certain statutory limitations, pays the plan's unfunded benefits with its insurance funds. *See* 29 U.S.C. §§ 1321-1322, 1342, 1361. Under 26 U.S.C. §§ 412(n)(5) and 430(k)(5), PBGC may enforce and perfect liens on behalf of a pension plan for unpaid minimum funding contributions.[1]

4. The Pension Plan is an ongoing single-employer defined benefit plan covered by Title IV of ERISA. *See* 29 U.S.C. § 1321.

---

[1] Internal Revenue Code ("IRC") § 412 was amended by the Pension Protection Act of 2006 ("PPA"). Under the PPA, IRC § 430 was created and IRC § 412(n) was replaced by IRC § 430(k) for plan years beginning after December 31, 2007. Because this complaint concerns unpaid minimum funding contributions related to plan years prior to 2008, statutory reference will only be made to IRC § 412(n).

5. Defendant Mid-States is an Illinois corporation with its principal place of business located in Aurora, Illinois. Mid-States is a contributing sponsor of the Pension Plan and is jointly and severally liable for the amount of any and all contributions and installments due the Pension Plan under ERISA. *See* 29 U.S.C. § 1082(c)(11), and IRC § 412(c)(11).

6. Each of the following defendants is a wholly owned subsidiary of Mid-States: (i) Aurora Express, Inc. ("Aurora"), an Illinois corporation with its principal place of business located in Aurora, Illinois; (ii) Valley Cartage, Inc. ("VCI"), an Illinois corporation with its principal place of business located in Aurora, Illinois; (iii) National Transport Express, Inc. ("NTI"), an Illinois Corporation with its principal place of business located in Baraboo, Wisconsin. Each of the foregoing defendants, in addition to Mid-States, is jointly and severally liable for the amount of any and all contributions and installments due the Pension Plan under ERISA. *See* 29 U.S.C. § 1082(c)(11) and IRC § 412(c)(11).

7. Collectively, the defendants named in paragraphs 5 and 6 are referred to as the "Pension Defendants."

8. Defendant Amcore Bank, N.A., a.k.a. American National Bancorp ("Amcore"), an Ohio corporation, has one or more UCC financing statements on file with the Illinois Secretary of State regarding certain assets of Mid-States.

9. Defendant Caterpillar Financial Services Corporation, a Delaware corporation, has one or more UCC financing statements on file with the Illinois, Indiana, Iowa, Michigan, Ohio, and Wisconsin Secretaries of State regarding certain assets of Mid-States.

10. Defendant Financial Federal Credit, Inc., a Texas corporation, has one or more UCC financing statements on file with the Illinois and Wisconsin Secretaries of State regarding

certain assets of Mid-States and with the Illinois Secretary of State regarding certain assets of Aurora.

11. Defendant Citicorp Vendor Finance, Inc., a.k.a. Copelco Capital, Inc., a Delaware corporation, has one or more UCC financing statements on file with the Illinois Secretary of State regarding certain assets of Mid-States.

12. Defendant Transportation Alliance Group, Inc., a.k.a. Transportation Alliance, LLC, an Illinois corporation, has one or more UCC financing statements on file with the Illinois Secretary of State regarding certain assets of Mid-States.

13. Defendant Commercial Credit Group, Inc., a Delaware corporation, has one or more UCC financing statements on file with the Illinois Secretary of State regarding certain assets of Mid-States.

14. Defendant Toyota Motor Credit Corporation, a California corporation, has one or more UCC financing statements on file with the Illinois Secretary of State regarding certain assets of Mid-States.

15. Defendant Cisco Systems Capital Corporation, a Nevada corporation, has one or more UCC financing statements on file with the Illinois Secretary of State regarding certain assets of Mid-States.

16. Defendant Citicapital Commercial Corporation, a.k.a. Associates Commercial Corporation, a Delaware corporation, has one or more UCC financing statements on file with the Illinois and Michigan Secretaries of State regarding certain assets of Mid-States.

17. Defendant Taylor Capital Business Advisor, Inc., a.k.a. Cole Taylor Bank and Cole Taylor Financial Services, Inc., a Delaware corporation, has one or more UCC financing

statements on file with the Indiana and Michigan Secretaries of State regarding certain assets of Mid-States.

18. Defendant Liberty Bancshares, Inc., a.k.a. Liberty Bank & Trust, an Illinois corporation, has one or more UCC financing statements on file with the Iowa Secretary of State regarding certain assets of Mid-States.

19. Defendant Ida County State Bank, an Iowa corporation, has one or more UCC financing statements on file with the Iowa Secretary of State regarding certain assets of Mid-States.

20. Defendant Ervin Leasing Company, a Michigan corporation, has one or more UCC financing statements on file with the Indiana and Michigan Secretaries of State regarding certain assets of Mid-States.

21. Defendant American National Bank and Trust Company of Chicago, an Illinois corporation, has one or more UCC financing statements on file with the Ohio Secretary of State regarding certain assets of Mid-States.

22. Defendant Tape Products Company, an Ohio corporation, has obtained a judgment against Mid-States in the Circuit Court for Will County, Illinois, in the amount of $247.00.

23. Defendant Atlas First Access, Inc., an Illinois corporation, has obtained a judgment against Mid-States in the Circuit Court for DuPage County, Illinois, in the amount of $38,560.00.

24. Defendant R.V. Evans Company, an Illinois corporation, has obtained a judgment against Mid-States in the Circuit Court for Macon County, Illinois, in the amount of $4,478.00.

25. Defendant Wizard of Wheels Yamaha-Kawasaki, Inc., an Illinois corporation, has obtained a judgment against Mid-States in the Circuit Court for Will County, Illinois, in the amount of $4,000.00.

26. Defendant S and F Custom Sign Corporation, an Alabama corporation, has obtained a judgment against Mid-States in the Circuit Court for Kane County, Illinois, in the amount of $3,020.00.

27. Collectively, the defendants named in paragraphs 8 through 26 are referred to as the "Creditor Defendants." Except for Amcore, the Creditor Defendants are named as defendants only with respect to Counts II, III, IV and VII. Amcore is named as a defendant with respect to Counts II, III, IV, V, VI and VII.

## BACKGROUND

Waiver Agreement

28. On or about September 29, 2006, the Internal Revenue Service ("IRS") granted Mid-States a conditional waiver of the statutory minimum funding standard for the Pension Plan for the plan year ending December 31, 2003 (the "Waiver Agreement"). Among other conditions, Mid-States was required to make contributions to the Pension Plan pursuant to a schedule agreed upon by the IRS and Mid-States.

29. As of October 15, 2007, Mid-States failed to make contributions to the Pension Plan that were required pursuant to the Waiver Agreement and IRC § 412 of the IRC. As a result, the waiver is retroactively null and void and a lien has arisen under IRC § 412(n) in the amount of $2,251,618, plus accrued interest, against Mid-States and all members of its controlled group in favor of the Pension Plan. No contributions to the Pension Plan have been made since March 31, 2007.

## COUNT I:
### STATUTORY LIABILITY FOR UNPAID MINIMUM FUNDING CONTRIBUTIONS
### (PENSION DEFENDANTS)

30. PBGC incorporates paragraphs 1 through 29 of this complaint as if fully set forth herein.

31. Each of the Pension Defendants is jointly and severally liable to the Pension Plan for the balance of minimum funding contributions required to satisfy the minimum funding standards under section 412 of the IRC and section 302 of ERISA (26 U.S.C. § 412(c)(11); 29 U.S.C. § 1082(c)(11)) which balance equals $2,251,618, plus accrued interest.

32. Pursuant to ERISA and the IRC, PBGC has the authority to perfect liens arising as a result of missed minimum funding contributions and to bring a civil action for appropriate relief to enforce those liens. *See* 26 U.S.C. § 412(n)(5); 29 U.S.C. § 1082(f)(5); 29 U.S.C. § 1303(e)(1)(B).

33. None of the Pension Defendants has tendered payment for the outstanding contributions.

**WHEREFORE,** PBGC respectfully requests that this Court:

(a) Enter judgment in favor of the Pension Plan against each of the Pension Defendants jointly and severally and in favor of the Pension Plan for due and unpaid minimum funding contributions to the Pension Plan, in the amount of $2,251,618, plus accrued interest; and

(b) Grant to PBGC and/or the Pension Plan such other and further relief as the Court deems just and proper.

## COUNT II:
### JUDGMENT DECLARING LIENS VALID AND PERFECTED AS FILED
### (ALL DEFENDANTS)

34.　　PBGC incorporates paragraphs 1 through 33 of this complaint as if fully set forth herein.

35.　　When the balance of unpaid minimum funding contributions to the Pension Plan exceeded $1,000,000, which occurred on or before October 15, 2007, statutory liens in favor of the Pension Plan automatically arose for the sum of such contributions, plus accrued interest, encumbering all property and rights to property of each of the Pension Defendants (collectively, the "Liens"). *See* 26 U.S.C. § 412(n); 29 U.S.C. § 1082(f). PBGC has authority to enforce the Liens. *See* 26 U.S.C. § 412(n)(5); 29 U.S.C. §§ 1082(f)(5), 1303(e)(1)(B).

36.　　After the Liens arose, the Pension Defendants continued to fail to make minimum funding contributions, and the amount of the Liens grew to $2,251,618, plus accrued interest.

37.　　Liens for unpaid minimum funding contributions arising under 26 U.S.C. § 412(n) are perfected upon PBGC's filing of a notice of federal lien in the appropriate jurisdiction(s).[2]

38.　　In August 2007, PBGC perfected the Liens against the real and personal property of the Pension Defendants by filing notices of federal lien in relevant jurisdictions in the amount of $1,052,084, which was the sum of due and unpaid minimum funding contributions to that date, plus accrued interest thereon.

39.　　In April 2008, PBGC filed additional notices of federal lien to reflect the further missed contributions by the Pension Defendants in the amount of $1,178,192. Appended to this complaint is a table showing the dates on which PBGC perfected the Liens with respect to each

---

[2] *See* IRC § 412(n)(3)(C) (such liens are treated as federal tax liens); 29 U.S.C. § 1082(f)(4)(C) (making 29 U.S.C. § 1368(c) applicable to such liens); 29 U.S.C. § 1368(c) (perfection to be effected pursuant to 26 U.S.C. § 6323(f)); 26 U.S.C. § 6323(a) & (f) (federal tax liens perfected by filing notices).

of the Pension Defendants, by filing notices of federal lien, and the jurisdictions and amounts in which PBGC filed such notices ("Appendix I").

40. As of March 28, 2008, PBGC calculates that the total amount of the Liens against the Pension Defendants is $2,251,618, plus accrued interest.

**WHEREFORE,** PBGC respectfully requests that this Court:

(a) Enter judgment in favor of the Pension Plan against each Defendant declaring the Liens are valid and perfected as filed; and

(b) Grant to PBGC and/or the Pension Plan such other and further relief the Court deems just and proper.

### COUNT III:
### DECLARATORY JUDGMENT THAT THE PENSION PLAN HOLDS VALID LIENS WITH PRIORITY OVER ANY INTEREST OF THE CREDITOR DEFENDANTS AGAINST ACCOUNTS RECEIVABLES AND OTHER PERSONAL PROPERTY OF MID-STATES, AURORA AND VCI WITH REGARDS TO THE AUGUST 2007 PERSONAL PROPERTY FILING (ALL DEFENDANTS)

41. PBGC repeats and realleges each and every allegation contained in paragraphs 1 through 40 hereof, as if fully set forth herein.

42. Pursuant to 26 U.S.C. § 6323, as a result of PBGC's filing of Notices of Federal Tax Liens on August 21, 2007, with the Illinois Secretary of State, in the amount of $1,052,804, plus accrued interest (the "August 2007 Personal Property Filing"), the Liens are valid against all interests of the Creditor Defendants in the personal property of Mid-States, Aurora and VCI to the extent such personal property was acquired by Mid-States, Aurora or VCI more than 45 days after the August 2007 Personal Property Filing.

43. Pursuant to 26 U.S.C. § 6323, as a result of the August 2007 Personal Property Filing, the Liens are also valid against all interests of the Creditor Defendants in the personal

property of Mid-States, Aurora or VCI to the extent such personal property was acquired by Mid-States, Aurora or VCI after each of the Creditor Defendants had actual notice of the Liens.

44. Upon information and belief, since the date 45 days after the August 2007 Personal Property Filing, Mid-States has generated accounts receivables in excess of the total amount of minimum contributions that are owed by Mid-States to the Pension Plan.

45. Upon information and belief, since the date 45 days after the August 2007 Personal Property Filing, Mid-States has acquired additional personal property.

46. PBGC holds valid secured liens against Mid-States' personal property in the amount of $1,052,804, plus accrued interest, with priority over the Creditor Defendants as to certain personal property, including accounts receivables, acquired by Mid-States more than 45 days after the August 2007 Personal Property Filing.

**WHEREFORE**, PBGC respectfully requests that the Court enter a declaratory judgment against all of the Defendants:

(a) Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $1,052,804, plus accrued interest, with priority over any interest of the Creditor Defendants against Mid-States' accounts receivables acquired more than 45 days after the August 2007 Personal Property Filing;

(b) Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $1,052,804, plus accrued interest, with priority over any interest of the Creditor Defendants against any other personal property of Mid-States, Aurora or VCI acquired by Mid-States, Aurora or VCI more than 45 days after the August 2007 Personal Property Filing;

(c) Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $1,052,804, plus accrued interest, with priority over any interest of the

Creditor Defendants against any or personal property of Mid-States, Aurora or VCI acquired by Mid-States, Aurora and VCI after the Creditor Defendants had actual notice of the Liens; and

(d) Granting to PBGC and/or the Pension Plan such other and further relief as the Court deems just and proper.

**COUNT IV:**
**DECLARATORY JUDGMENT THAT THE PENSION PLAN HOLDS VALID LIENS WITH PRIORITY OVER ANY INTEREST OF THE CREDITOR DEFENDANTS AGAINST ACCOUNTS RECEIVABLES AND OTHER PERSONAL PROPERTY OF MID-STATES, AURORA AND VCI WITH REGARDS TO THE APRIL 2008 PERSONAL PROPERTY FILING (ALL DEFENDANTS)**

47. PBGC repeats and realleges each and every allegation contained in paragraphs 1 through 46 hereof, as if fully set forth herein.

48. Pursuant to 26 U.S.C. § 6323, as a result of PBGC's filing of Notices of Federal Tax Liens on April 1, 2008, with the Illinois Secretary of State, in the amount of $2,251,618, plus accrued interest (the "April 2008 Personal Property Filing"), the Liens are valid against all interests of the Creditor Defendants in the personal property of Mid-States, Aurora and VCI to the extent such personal property was acquired by Mid-States, Aurora or VCI more than 45 days after the April 2008 Personal Property Filing.

49. Pursuant to 26 U.S.C. § 6323, as a result of the April 2008 Personal Property Filing, the Liens are also valid against all interests of the Creditor Defendants in the personal property of Mid-States, Aurora or VCI to the extent such personal property was acquired by Mid-States, Aurora or VCI after each of the Creditor Defendants had actual notice of the Liens.

50. Upon information and belief, since the date 45 days after the April 2008 Personal Property Filing, Mid-States has generated accounts receivables that are subject to the Liens.

51. Upon information and belief, since the date 45 days after the April 2008 Personal Property Filing, Mid-States has acquired additional personal property.

52. PBGC holds valid secured liens against Mid-States' personal property in the amount of $2,251,618, plus accrued interest, with priority over the Creditor Defendants as to any personal property, including accounts receivables, acquired by Mid-States more than 45 days after the April 2008 Personal Property Filing.

**WHEREFORE**, PBGC respectfully requests that the Court enter a declaratory judgment against all of the Defendants:

(a) Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $2,251,618, plus accrued interest, with priority over any interest of the Creditor Defendants against Mid-States' accounts receivables acquired more than 45 days after the April 2008 Personal Property Filing;

(b) Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $2,251,618, plus accrued interest, with priority over any interest of the Creditor Defendants against any other personal property of Mid-States, Aurora or VCI acquired by Mid-States, Aurora or VCI more than 45 days after the April 2008 Personal Property Filing;

(c) Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $2,251,618, plus accrued interest, with priority over any interest of the Creditor Defendants against any personal property of Mid-States, Aurora or VCI acquired by Mid-States, Aurora or VCI more than days after the Creditor Defendants had notice of the Liens; and

(d) Granting to PBGC and/or the Pension Plan such other and further relief as the Court deems just and proper.

**COUNT V:
DECLARATORY JUDGMENT THAT PBGC HOLDS A VALID LIEN WITH PRIORITY OVER CERTAIN DISBURSEMENTS MADE BY DEFENDANT AMCORE BANK, N.A. AGAINST MID-STATES' ACCOUNTS RECEIVABLES AND OTHER PERSONAL PROPERTY WITH REGARDS TO THE AUGUST 2007 FILINGS
(DEFENDANT AMCORE BANK, N.A.)**

53. PBGC repeats and realleges each and every allegation contained in paragraphs 1 through 52 hereof, as if fully set forth herein.

54. Upon information and belief, since the August 2007 Personal Property Filing, Amcore has made disbursements to Mid-States which Amcore contends are secured by Mid-States' personal property.

55. Pursuant to 26 U.S.C. § 6323, as a result of the August 2007 Personal Property Filing, the Liens are valid against all interests of Defendant Amcore in Mid-States' personal property for any disbursements made by Amcore more than 45 days after the August 2007 Personal Property Filing.

56. Pursuant to 26 U.S.C. § 6323, as a result of the August 2007 Personal Property Filing, the Liens are also valid against all interests of the Defendant Amcore in Mid-States' personal property for any disbursements made by Amcore after the August 2007 Personal Property Filing to the extent that Amcore had actual notice of the Liens.

57. Pursuant to 26 U.S.C. § 6323, as a result of PBGC's filing of Notices of Federal Tax Liens with the Cook County (Illinois) Register of Deeds, on August 22, 2007, in the amount of $1,052,804, plus accrued interest (the "August 2007 Real Property Filing"), the Liens are valid against any interest of Amcore in Mid-States' real property for any disbursements made by Amcore more than 45 days after the filing of the August 2007 Real Property Filing.

58.     Pursuant to 26 U.S.C. § 6323, as a result of the August 2007 Real Property Filing, the Liens are also valid against any interest of Amcore in Mid-State's real property for any disbursements made by Amcore after the filing of the Liens to the extent that Amcore had actual notice of the Liens.

**WHEREFORE**, PBGC respectfully requests that the Court enter a declaratory judgment against Defendant Amcore:

(a)     Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $1,052,804, plus accrued interest, with priority over any interest of Amcore against Mid-States' accounts receivables to the extent any disbursements were made by Amcore more than 45 days after the filing of the August 2007 Personal Property Filing;

(b)     Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $1,052,804, plus accrued interest, with priority over any interest of Amcore against any other personal property of Mid-States to the extent any disbursements were made by Amcore more than 45 days after the filing of the August 2007 Personal Property Filing;

(c)     Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $1,052,804, plus accrued interest, with priority over any interest of Amcore against any real property of Mid-States to the extent any disbursements were made by Amcore more than 45 days after the filing of the August 2007 Real Property Filing;

(d)     Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $1,052,804, plus accrued interest, with priority over any interest of Amcore against any other real or personal property of Mid-States to the extent any disbursements were made by Amcore after Amcore had actual notice of the Liens; and

(e)     Granting to PBGC and/or the Pension Plan such other and further relief as the Court deems just and proper.

### COUNT VI:
### DECLARATORY JUDGMENT THAT PBGC HOLDS A VALID LIEN WITH PRIORITY OVER CERTAIN DISBURSEMENTS MADE BY DEFENDANT AMCORE BANK, N.A. AGAINST MID-STATES' ACCOUNTS RECEIVABLES AND OTHER PERSONAL PROPERTY WITH REGARDS TO THE APRIL 2008 FILINGS
### (DEFENDANT AMCORE BANK, N.A.)

59.    PBGC repeats and realleges each and every allegation contained in paragraphs 1 through 58 hereof, as if fully set forth herein.

60.    Upon information and belief, since the April 2008 Personal Property Filing, Amcore has made disbursements to Mid-States which Amcore contends are secured by Mid-States' personal property.

61.    Pursuant to 26 U.S.C. § 6323, as a result of the April 2008 Personal Property Filing, the Liens are valid against all interests of Defendant Amcore in Mid-States' personal property for any disbursements made by Amcore more than 45 days after the April 2008 Personal Property Filing.

62.    Pursuant to 26 U.S.C. § 6323, as a result of the April 2008 Personal Property Filing, the Liens are also valid against all interests of the Defendant Amcore in Mid-States' personal property for any disbursements made by Amcore after the April 2008 Personal Property Filing to the extent that Amcore had actual notice of the Liens.

63.    Pursuant to 26 U.S.C. § 6323, as a result of PBGC's filing of Notices of Federal Tax Liens with the Cook County (Illinois) Register of Deeds, on April 4, 2008, in the amount of $2,251,618, plus accrued interest (the "April 2008 Real Property Filing"), the Liens are valid against any interest of Amcore in Mid-States' real property for any disbursements made by Amcore more than 45 days after the filing of the August 2007 Real Property Filing.

64.     Pursuant to 26 U.S.C. § 6323, as a result of the April 2008 Real Property Filing, the Liens are also valid against any interest of Amcore in Mid-State's real property for any disbursements made by Amcore after the filing of the Liens to the extent that Amcore had actual notice of the Liens.

**WHEREFORE**, PBGC respectfully requests that the Court enter a declaratory judgment against Defendant Amcore:

(a)     Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $2,251,618, plus accrued interest, with priority over any interest of Amcore against Mid-States' accounts receivables to the extent any disbursements were made by Amcore more than 45 days after the filing of the April 2008 Personal Property Filing;

(b)     Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $2,251,618, plus accrued interest, with priority over any interest of Amcore against any other personal property of Mid-States to the extent any disbursements were made by Amcore more than 45 days after the filing of the April 2008 Personal Property Filing;

(c)     Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $2,251,618, plus accrued interest, with priority over any interest of Amcore against any real property of Mid-States to the extent any disbursements were made by Amcore more than 45 days after the filing of the April 2008 Real Property Filing;

(d)     Finding and declaring that the Pension Plan holds valid secured liens, in the aggregate amount of $2,251,618, plus accrued interest, with priority over any interest of Amcore against any other real or personal property of Mid-States to the extent any disbursements were made by Amcore after Amcore had actual notice of the Liens; and

(e)  Granting to PBGC and/or the Pension Plan such other and further relief as the Court deems just and proper.

## COUNT VII:
### WRITS OF EXECUTION AND DECREES OF FORECLOSURE
### (ALL DEFENDANTS)

65.  PBGC incorporates paragraphs 1 through 64 of this complaint as if fully set forth herein.

**WHEREFORE,** PBGC respectfully requests that this Court:

a.  Issue writs of execution with respect to the judgments rendered by the Court in this action and the payment obligations secured by the Liens;

b.  Issue decrees of foreclosure pursuant to directing the United States Marshal to:

   i.  Levy on and transfer to PBGC, for the benefit of the Pension Plan, all cash and cash equivalents encumbered by a Lien and in excess of superior liens thereon;

   ii.  Levy on and transfer to PBGC, for the benefit of the Pension Plan, such other personal property of the Pension Defendants as PBGC may nominate as acceptable in partial satisfaction of the Pension Defendants' obligations, to the extent such strict foreclosure is consistent with applicable law (including, to the extent applicable, 810 ILCS 5/9-620 through 622);

   iii.  Levy on and sell all other property and rights to property encumbered by, and available for satisfaction of, any of the Liens or any lien arising from a judgment rendered by the Court in this

        action, except: (i) property that PBGC may ask the Court to exclude from foreclosure, such as the interests of certain Pension Defendants; and (ii) any real property located outside of Illinois and with respect to which the proper venue for foreclosure lies in the state and district where the real property is located, or, if the real property is located in more than one district in a single state, then in any such district, pursuant to 28 U.S.C. § 1392; and

    iv.    Distribute the proceeds of sale in accordance with the priority of interests therein; and

c.    Order that all sales pursuant to the Court's decrees of foreclosure shall be free and clear of all liens, security interests and other property rights that the Court has declared to exist in the property sold; and

d.    Grant to the PBGC and/or the Pension Plan such other and further relief as the Court deems just and proper.

Dated: July 24, 2008                    Respectfully submitted,
      Washington, D.C.

                                            /s/  Joel W. Ruderman
                                        ISRAEL GOLDOWITZ
                                        Chief Counsel
                                        CHARLES L. FINKE
                                        Deputy Chief Counsel
                                        JOEL W. RUDERMAN
                                        Assistant Chief Counsel
                                        FRANK A. ANDERSON
                                        Attorney
                                        PENSION BENEFIT GUARANTY CORP.
                                        Office of the Chief Counsel
                                        1200 K Street, N.W.
                                        Washington, D.C.  20005-4026
                                        Ph: 202-326-4020 (x3926)
                                        E-mails: ruderman.joel@pbgc.gov *and*
                                        efile@pbgc.gov

                                        Counsel for the Pension Benefit Guaranty
                                        Corporation

Local Counsel:                          PATRICK J. FITZGERALD
                                        UNITED STATES ATTORNEY
                                        JOEL R. NATHAN
                                        Assistant United States Attorney
                                        2l9 South Dearborn Street
                                        Chicago, Illinois 60604
                                        312/353-8449
                                        Attorney No.2019566

                                        Local Counsel for the Pension Benefit Guaranty
                                        Corporation